UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

**CRIMINAL CASE NO. 05-77-DLB**

**UNITED STATES OF AMERICA**　　　　　　　　　　　　　**PLAINTIFF**

**VS.**　　　　　**MEMORANDUM OPINION AND ORDER**

**MARCUS MCGUIRE**　　　　　　　　　　　　　　　　　　**DEFENDANT**

*****************************

　　　　This matter is before the Court on Defendant's Motion to Suppress Evidence (Doc. # 17). The government has filed its response to the motion. (Doc. # 20). An evidentiary hearing was conducted on February 2, 2006. Defendant was present for the hearing and was represented by Attorney Deanna Dennison. Plaintiff was represented by Assistant U.S. Attorney Bob McBride. The proceedings were recorded by official court reporter Lisa Wiesman.

　　　　On March 2, 2006, the transcript of the hearing was filed of record. (Doc. # 37). On March 16, 2006, Defendant filed a supplemental memorandum of law in support of his motion to suppress. (Doc. # 38). The government having filed its response (Doc. # 40) and Defendant now having submitted his reply (Doc. # 41), the motion is ripe for review. For the reasons set forth herein, Defendant's motion to suppress is **DENIED**.

　　　　**I.**　　　**Issues Raised**

　　　　In Defendant's original motion and supplemental memoranda, he seeks to suppress evidence seized by law enforcement officers following an early-morning search of his

vehicle on July 3, 2005. In support, Defendant argues that: 1) Officer Capps' encounter with him constituted a warrantless seizure in violation of his Fourth Amendment rights, and 2) alternatively, even if it was not a seizure, the officers lacked probable cause to search the vehicle because Officer Capps' testimony that he smelled burnt marijuana emanating from the vehicle was not credible.

**II.     Findings of Fact**

On February 2, 2006, the undersigned conducted an evidentiary hearing wherein two witnesses testified. More particularly, the United States called Kenton County Police Officers Brian Capps and Andrew Schierberg. Although a witness subpoenaed on behalf of Defendant was present to testify, after a brief colloquy with the Court, defense counsel chose not to call that witness. (Doc. # 37, Transcript of Suppression Hearing (TR) at 51-52).[1] Nor did Defendant testify on his own behalf. After considering the credibility of the witnesses, and the exhibits admitted during the hearing, the Court makes the following factual findings:

1. At approximately 12:51 a.m. on July 3, 2005, while on routine patrol in rural Kenton County, Officer Capps noticed a black Chevrolet Cavalier parked at the bottom of a driveway on Wilson Road in Independence, Kentucky. The Cavalier was parked at the bottom of a long driveway, just off the roadway, with its headlights off. Although Capps was initially unsure if the vehicle was running, he was able to determine that it was not running after he exited his cruiser.

---

[1] In fact, a brief recess was taken so defense counsel could speak with the subpoenaed witness to determine if she would testify. (TR at 64). Upon returning to the courtroom, defense counsel indicated she would not testify. (*Id.*)

2. Upon observing the Cavalier, Officer Capps stopped his marked cruiser, looked into the vehicle from his cruiser, and was able to observe the silhouettes of two persons. Capps did not activate his sirens or lights upon stopping his cruiser, or at any time during the encounter. Because the lights and/or sirens were not activated, there is no evidence that Defendant knew Capps was a police officer prior to him approaching the Cavalier. Officer Capps parked his police cruiser behind the Cavalier, blocking its egress out of the driveway.

3. Due to the lateness of the hour, and the fact that the vehicle was stopped in a very rural area in the south end of Kenton County where the police had received several burglary reports, Officer Capps decided to approach the Cavalier. After he exited his cruiser, Officer Capps approached the driver's side window and tapped on the window. Defendant, who was seated in the driver's seat, rolled down the window. When he did so, Officer Capps faintly smelled the odor of marijuana from inside the vehicle.

4. A female passenger, who appeared to Officer Capps to be a teenager, was sitting in the passenger side of the front seat. When asked for identification, Defendant could not produce a driver's license or other form of photo identification. He did identify himself as Marcus McGuire and provided Capps with his date of birth and social security number.

5. During their brief conversation, Officer Capps' tone was inquisitive rather than coercive. In fact, up until Capps noticed the faint odor of marijuana emanating from the vehicle, there was no behavior on his part which would differentiate this encounter from one where an officer approaches a vehicle to offer assistance.

6. Officer Capps thereafter returned to his cruiser and checked Defendant for warrants through NCIC. The check revealed no warrants. Officer Capps returned to

Defendant's vehicle and at that time could smell the odor of burnt marijuana more strongly than before.

7. Officer Capps asked Defendant to step out of the vehicle and Defendant complied. Defendant sat down on the driveway while Officer Capps conversed with the female passenger. By this time a second officer, Andrew Schierberg, had arrived on the scene and was standing next to Defendant in the driveway.

8. Although the female passenger gave Officer Capps her correct name, she provided several false dates of birth. After a brief period of time, Capps was eventually able to determine that she was 15 years old and lived nearby. He then asked her to step out of the vehicle.

9. Once the female passenger exited the vehicle, Officer Capps told Defendant he was going to search the vehicle due to the smell of marijuana. During that search, Officer Capps found quantities of crack cocaine, marijuana, and a pistol. The drug evidence was found in the middle console, and the pistol was found inside the trunk. During a post-arrest, follow-up search by Officer Schierberg, he also smelled a noticeable odor of burnt marijuana.

10. After the drugs were located, Defendant was arrested and placed in the back of the police cruiser. Only twelve (12) minutes elapsed between Officer Capps' initial approach of the vehicle and Defendant's arrest.

11. Officer Capps thereafter questioned the female passenger, who advised that approximately one hour before, she and Defendant had smoked marijuana together.

### III. Applicable Law

The Sixth Circuit has held that there are three types of permissible encounters between the police and citizens: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause." *United States v. Avery,* 137 F.3d 343, 352 (6th Cir. 1997) (citations omitted).

Not every interaction between a civilian and the police constitutes a seizure for Fourth Amendment purposes. *United States v. Taylor,* 956 F.2d 572, 575 (6th Cir. 1992). "[L]aw enforcement officers may approach individuals and ask general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that he was not free to leave." *United States v. Waldon,* 206 F.3d 597, 603 (6th Cir. 2000). Law enforcement officers do not implicate much less "violate the Fourth Amendment by merely approaching an individual on the street ... [or] by asking him if he is willing to answer some questions." *Florida v. Royer,* 460 U.S. 491, 497 (1983) (plurality). Whether an encounter is consensual depends on the officer's objective behavior, not on any subjective suspicion of criminal activity. *Waldon,* 206 F.3d at 603. Police officers may initiate consensual encounters even when they suspect the civilian of wrongdoing but cannot yet articulate a reasonable suspicion as to why. *Id.*

Once a consensual encounter becomes a *Terry*-stop, that stop must be supported by reasonable suspicion. "Under *Terry* [*v. Ohio*, 392 U.S. 1 (1968)], 'where a law enforcement officer lacks probable cause, but possesses a reasonable and articulable

suspicion that a person has been involved in the criminal activity, he may detain the suspect briefly to investigate the suspicious circumstances.'" *United States v. Hurst*, 228 F.3d 751, 756-57 (6th Cir. 2000) (quoting *United States v. Bentley*, 29 F.3d 1073, 1075 (6th Cir. 1994)). A "'reasonable suspicion' is considerably less than proof of wrongdoing by a preponderance of evidence." *Hurst,* 228 F.3d at 757. "The scope of law enforcement activities in an investigative stop depends upon the circumstances that originally justified the stop. *United States v. Martin*, 289 F.3d 392, 396 (6th Cir. 2002) "[C]ourts must not view factors upon which police officers rely to create reasonable suspicion in isolation ... courts must consider all of the officers observations, and not discard those that may seem insignificant or troubling when standing alone." *Id.* at 399.

## IV. Analysis

### A. Defendant was not seized for Fourth Amendment purposes until he was asked by Officer Capps to exit the vehicle.

In this case, there is no evidence that Officer Capps engaged in the type of coercive behavior which would lead a reasonable person to believe that he was not free to leave. In fact, aside from the fact that Officer Capps' cruiser was parked behind Defendant's vehicle in the driveway, there is no other evidence that a seizure occurred. In short, a police officer who simply approaches a car already stopped by the driver's own volition does not infringe upon any Fourth Amendment interest.

The evidence in this case revealed that Officer Capps did not activate his cruiser's lights or siren when he stopped. Additionally, there is no evidence that Capps used physical force, displayed or used his weapon, threatened or physically touched Defendant, or raised his voice, or in any way intimidated Defendant. Under these facts, Defendant was

not seized within the meaning of the Fourth Amendment when Officer Capps stopped his cruiser and approached Defendant's vehicle.

Defendant's reliance on the Sixth Circuit's unpublished opinion in *United States v. Baldwin*, 114 Fed. Appx. 675 (6th Cir. 2004) is misplaced. First and foremost, *Baldwin* is an unpublished opinion. Secondly, the facts of *Baldwin* are distinguishable from those herein. In *Baldwin*, the police were looking for an individual last seen fleeing from the scene of multiple gunshots fired in a high-crime area of Cincinnati, Ohio. The police observed Baldwin, who was the passenger in a vehicle parked on a small, one-way street with no other occupied vehicles or pedestrians in the area. *Id.* at 678. One officer parked his cruiser two feet behind and to the south of the vehicle. *Id.* Another officer parked his cruiser in front of and north of the vehicle, completely blocking its egress. *Id.* The officers exited their vehicles with their weapons drawn and found Baldwin and his uncle sitting on the front seats. The officers then interrogated Baldwin and his uncle, Gilchrist, using a commanding tone of voice, and they physically removed his uncle from the vehicle. *Id.*

Perhaps most importantly from a distinguishing standpoint was the physical configuration of the officers' cruisers after they came to rest. Unlike the situation herein, where there is no evidence that Officer Capps intentionally blocked Defendant's egress, the situation in *Baldwin* was entirely different. First, there were two cruisers, as opposed to one, and secondly, the cruisers had Baldwin's vehicle surrounded in front and back. The fact that the vehicle was surrounded by two police cars on a small, one-way street at 5:00 a.m. was sufficient to create an inference that a reasonable person in Baldwin's position would not have felt free to leave. Under those facts, the Sixth Circuit found a seizure occurred as soon as the officers approached Baldwin's vehicle. *Id.* at 678-79. The facts

herein are far less intrusive as those in *Baldwin* and accordingly, Defendant's reliance upon *Baldwin* is rejected.

The Court's decision that Officer Capps' initial approach of Defendant's vehicle was not a seizure for Fourth Amendment purposes is supported by several other, factually similar, *published* circuit court opinions.  See e.g. *United States v. Barry*, 394 F.3d 1070 (8th Cir. 2005) (holding that officer's approach of a parked car, and knocking three times until window was rolled down, did not constitute a seizure); *United States v. Hendricks*, 319 F.3d 993 (7th Cir. 2003) (finding no seizure where officer approached vehicle parked at gas station); *United States v. Baker*, 290 F.3d 1276 (11th Cir. 2002) (holding that encounter with police officers, who approached running vehicle stopped in traffic and made inquiries, was not a seizure); *Latta v. Keryte*, 118 F.3d 693 (10th Cir. 1997) (finding no seizure where officer approached a parked car and asked defendant to get out); *United States v. Dockter*, 58 F.3d 1284 (8th Cir. 1995) (holding that individuals were not seized for Fourth Amendment purposes when a sheriff's deputy pulled his vehicle directly behind their parked car and activated his amber warning lights); *United States v. Kim*, 25 F.3d 1426 (9th Cir. 1994) (holding that an officer's approach of "a car parked in a public place does not constitute an investigatory stop or higher echelon Fourth Amendment seizure"); *United States v. Encarnacion-Galvez*, 964 F.2d 402 (5th Cir. 1992) (finding no seizure where officers approached a parked car and asked for identification).  Of these cases, the Court finds that *Barry* is the most factually analogous and therefore, the most persuasive.

In *Barry,* the officer noticed a car parked late at night in a high crime area.[2] The

---

[2] Although Defendant's car was not parked in a high crime area, Officer Capps did indicate that there had been several burglary reports in the south end of the county, which would include

officer approached the car, after parking in front of it, and knocked on the window. The occupant rolled down the window and the officer could smell marijuana smoke and air freshener. The court held that, up to the point when Sergeant Brothers saw a mist inside the vehicle and smelled marijuana and air freshener, Sergeant Brothers exhibited no show of authority, that is, he never raised his voice, he never drew his holstered weapon, he never activated his emergency lights, and he never ordered Barry to exit his vehicle. Sergeant Brothers had merely approached a parked vehicle, which the Fourth Amendment permits. Barry had simply encountered a police officer in a public place. No reasonable person would have believed he was seized at that point. *Id.* at 1075.

In this case, Officer Capps did nothing more than approach two individuals sitting in a parked car with its headlights out in order to find out what they were doing there at approximately 1:00 a.m. When Capps spoke to Defendant, the conversation was brief and limited to ascertaining Defendant's identity and his purpose for being there, and it was accompanied by no show of force whatsoever beyond the fact that Capps was clearly a police officer.

It was not until Officer Capps asked Defendant to exit the vehicle that a Fourth Amendment seizure occurred. Although Defendant's vehicle was blocked by Officer Capps' cruiser, because the cruiser's lights and sirens were not activated, there is no evidence that Defendant even knew Capps was a police officer when he approached the vehicle. Additionally, there were no other indicia of authority shown that would lead a reasonable person to believe that they were not free to leave.

---

the area where Defendant's vehicle was parked.

**B.     Once Officer Capps detected the odor of marijuana emanating from within Defendant's vehicle, he had probable cause for a warrantless automobile search.**

Defendant alternatively argues that even if the initial encounter was not a seizure, because Capps' testimony that he smelled marijuana was not credible, the warrantless search lacked probable cause. Despite Defendant's protestations to the contrary, the Court has already found as a matter of fact that upon the Defendant rolling down his driver's side window, Officer Capps detected the faint odor of marijuana. *See* Finding of Fact (FOF) at ¶ 3. This finding was corroborated by the female passenger's admission that she and Defendant had smoked marijuana together less than one hour before. After Capps returned to Defendant's vehicle and *before* he asked Defendant to exit the vehicle, Capps smelled the odor of burnt marijuana more strongly than before. *See* FOF at ¶ 6. This all occurred prior to any Fourth Amendment seizure.

It is well-settled within the Sixth Circuit that an odor of narcotics by police officers provides probable cause to believe that narcotics are present. *See United States v. Foster*, 376 F.3d 577, 588 (6th Cir. 2004); *United States v. Garza,* 10 F.3d 1241, 1246 (6th Cir.1993) ("[an officer's] smelling the marijuana [during a vehicle stop] constituted probable cause to believe that there was marijuana in the vehicle. Once this probable cause existed, a search warrant was not necessary.")

Based on Officer Capps' detecting smelling the odor of marijuana emanating from Defendant's vehicle, he had probable cause to search the vehicle, including the trunk. *Garza,* 10 F.3d at 1246. Alternatively, even if the smell of marijuana only provided probable cause to search the vehicle's interior compartments, including the middle console, the discovery of marijuana and crack cocaine inside the console provided further probable

cause to search the trunk. *See United States v. Burns*, 298 F.3d 523, 542 (6th Cir. 2002) (warrantless search of trunk valid because bag of cocaine in plain view gave officer probable cause to believe vehicle contained more contraband); *United States v. Bradford*, 423 F.3d 1149 (10th Cir. 2005) (odor of burnt marijuana in passenger compartment of vehicle does not, standing alone, establish probable cause to search vehicle's trunk; however, same odor combined with corroborating evidence of contraband establishes probable cause to search trunk).

V.   **Conclusion**

Therefore, for the reasons stated herein, **IT IS ORDERED as follows**:

1. Defendant's motion to suppress (Doc. # 17) be, and is hereby **DENIED**;

2. This matter is set for a **Status Conference** on **May 15, 2006** at **1:30 p.m.** at the U.S. Courthouse, Covington, Kentucky, at which time the Court will schedule this matter for trial;

3. The time period from November 22, 2005 through the date of this Order, totaling 170 days, is deemed **excludable time** pursuant to Title 18, United States Code § 3161(h)(1)(F).

This 11th day of May, 2006.



Signed By:
*David L. Bunning*    DB
United States District Judge

G:\DATA\ORDERS\CovCrim\2005\05-77-MOO-Denying-Motion-Suppress.wpd